

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 20, 2024

**BY ECF**
The Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:     **United States v. Mohsin Suhan**
>         **S4 24 Cr. 109 (JGK)**

Dear Judge Koeltl:

Mohsin Suhan is a violent drug trafficker who helped plan and execute a vicious robbery of a marijuana supplier in June 2023. For that robbery, the defendant recruited multiple gunmen who kidnapped, assaulted, and ultimately shot the victim, while trying to steal hundreds of thousands of dollars' worth of marijuana. Many of the people who organized and executed the robbery, though not the defendant, were charged and arrested in March 2024. Only days after the defendant's co-conspirators were charged, arrested, and made their first District Court appearance, the defendant booked a last-minute, one-way flight to Dubai, taking with him a duffle bag stuffed with cash. He was arrested trying to come back into the United States, more than six weeks later.

Suhan's charges trigger a presumption of pretrial detention. Because of his history, his conduct during this offense, the vast evidence implicating the defendant, and his very recent history of fleeing the country to try and avoid arrest and prosecution, he cannot rebut the presumption that he is a flight risk and a clear danger to the community. The law requires his detention pending trial.

## I.     Background

### a.   The Robbery

Last summer, with his indicted co-defendants and others, the defendant helped orchestrate the robbery of a marijuana supplier in Queens. On June 22, 2023, Suhan and multiple others, including co-defendants Arian Ali, Shaharia Khan, and multiple armed gunmen, waited outside a warehouse in Queens for the supplier to exit the building. Ali and Suhan, who had been dealing drugs together for years organized the robbery. The defendant, who lived in Buffalo, recruited gunmen from Buffalo to come to New York City to commit the robbery. The defendant positioned his gunmen outside the warehouse and then waited around the corner with Ali to go in and steal hundreds of pounds of marijuana, after the gunmen had tied up the supplier.

Just before midnight, as the supplier exited the warehouse, the defendant's gunmen used their car to trap the supplier on a dead-end street. Three gunmen then forced the supplier out of his car at gunpoint and marched the supplier back to the warehouse. As they took their captive back to the warehouse, a fourth robber joined in. The image below is from security video of the incident and shows the robbers, including three who are armed with handguns, one of whom is pointing a gun directly at the supplier's head, forcing the supplier to the warehouse.



After forcing the supplier to the warehouse, the robbers stole the warehouse keys and began to assault the supplier. They pistol whipped the supplier. They kicked him. They dragged him across the ground. And ultimately, they shot him. The supplier was shot in the left shoulder, above the collarbone, and he later had the bullet removed from his left flank. The robbers then took the keys to the warehouse and left, planning to come back and empty it out later.

The defendant helped plan this robbery. The defendant is a large-scale marijuana dealer who has been dealing marijuana with Arian Ali for years, and who at the time of the robbery was dealing and living in Buffalo. He recruited the gunmen who committed the robbery, and he drove with them from Buffalo the morning of the robbery. During the execution of the robbery, he was just around the corner, in constant communication with the gunmen, waiting to go inside the warehouse and load up the marijuana, after his gunmen assaulted, subdued, and tied up the supplier. The defendant and his gunmen returned to Buffalo shortly after the robbery.

The evidence of the defendant's involvement in the charged robbery and drug trafficking conspiracy is very strong. As described in the complaint that was filed against the defendant, a cooperating witness ("CW") who was involved in the robbery has given a detailed description of the defendant's involvement in the robbery and in the years' long marijuana trafficking conspiracy. The evidence of the defendant's role in the robbery and drug trafficking is corroborated by

significant other evidence. Evidence seized from his Instagram account shows that he was coordinating drug couriers, which he called "flyers" to ship marijuana to the United Kingdom. Seized text messages between the CW and Arian Ali described the robbery and its planning in real time, including that the "shooters" who committed the robbery came from "Buffalo." And the defendant's cellphone location records also confirm his involvement in the robbery and show that he traveled down from Buffalo the morning of the robbery, was around the corner from the robbery while he and his gunmen waited for the supplier to exit the warehouse, and then fled the area immediately after the robbery and returned to Buffalo.

      b. <u>The Defendant Fled the United States After His Co-Conspirators Were Arrested and Charged</u>

The first defendants in this case were charged and arrested in mid-March 2024. The first District Court conference was on March 26, 2024. At court that day, Arian Ali told the CW that the defendant, who was not yet charged, was getting ready to leave the United States. Also on March 26, 2024, was a second bail argument for Ali. On March 20, 2024, in advance of the bail argument, the Government filed a letter that gave a detailed description of the evidence in the case, including that we had video of the robbery and had identified that the gunmen used to commit the robbery came from Buffalo.

Only four days after the initial District Court conference, on March 30, 2024, the defendant followed through on what he had told Ali and booked a same-day, one-way flight from New York to Dubai. Before he fled the country, the defendant posted a picture on Instagram showing that he was taking with him a cash-filled duffle bag.



**Linked Media File:** linked_media/archived_stories_17965183745713603.jpg

**Story Id** 18045491566640271

**Timestamp** 2024-03-30 20:46:32 UTC

## II.    <u>Argument</u>

The defendant cannot rebut the presumption in favor of detention, and no release conditions that the Court may fashion could reasonably protect the community or prevent the defendant from fleeing.

Where, as here, a defendant is charged with offenses under 18 U.S.C. § 924(c) and 21 U.S.C. §§ 846 and 841(b)(1)(B), there is a mandatory presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). The defendant cannot overcome this presumption in favor of detention.  Furthermore, the (1) nature and circumstances of the offenses charged, (2) weight of the evidence against the defendant, (3) history and characteristics of the defendant, and (4) nature and seriousness of the danger to any person or the community that would be posed by the defendant's release weigh heavily in favor of detention in this case.  *See* 18 U.S.C. § 3142(g).  Consistent with the factors set forth in 18 U.S.C. §§ 3142(e)(3) and 3142(g), the defendant should be detained to protect the community and prevent his flight from prosecution.

The defendant bears the burden of producing evidence to rebut the presumption in favor of detention in this case.  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).  But even if

a defendant satisfies that initial burden, the presumption does not vanish; instead, it "remains a factor to be considered among those weighed by the district court." *Id*.

To begin, although the Court engages in *de novo* analysis of bail applications, it should be noted that Magistrate Judge Jennifer Willis conducted a full bail hearing on May 21, 2024 and found that the defendant was a flight risk, that he had already fled the United States following his co-defendants' arrests and appearances in court, and that no proposed conditions could meaningly mitigate the risk. *See* Ex. 1 (transcript of 5/21/24 detention hearing) at 35-37. Judge Willis also described that given the defendant's resources accumulated from drug trafficking, which were not disclosed to pretrial, that there was a heightened continued risk of flight. *See* Ex. 1 at 15, 36. The defendant is simply wrong when he writes to the Court that no detention hearing happened in this case and that he is now making arguments that were "not at all presented to" a Magistrate Judge. Bail app. at 1.[1]

Judge Willis's determination that the defendant is a flight risk was plainly correct. The defendant told his co-conspirator Arian Ali before the March 26, 2024 conference that he was thinking about leaving the United States. Then on March 30, 2024, just four days later, the defendant bought a same-day, one-way ticket to Dubai, a place where there is no extradition treaty with the United States, and left the country. Under the circumstances, that was clearly an attempt to avoid arrest and prosecution.

As he did in the argument before Judge Willis, the defendant tries to frame this no-notice trip to an extradition-free country as nothing more than a spontaneous, romantic getaway. This argument falls flat. The defendant may have given his girlfriend a diamond ring he purchased with the proceeds of his drug trafficking during the trip, but that does not change the fact that he was attempting to avoid arrest and prosecution by leaving the country when he did. The timing of the trip, coupled with the charging and arrests of the co-defendants, and the same-day purchase of the tickets lends itself to only one reasonable conclusion: the defendant was fleeing.

With his exhibits, the defendant tries to show that his flight to Dubai was planned on March 20, 2024. This does nothing to help his argument, and it may make things worse for him. Arian Ali, the defendant's principal co-defendant was arrested on March 19, 2024, and he had his initial bail argument that same day. During that initial argument, key evidence in the case was described, including that it had been identified that the gunmen for the robbery came from Buffalo. The defendant now argues to the Court that it was the next day, not days later, when he started planning

---

[1] The defendant was arrested on May 13, 2024 and made an initial appearance before Magistrate Judge Valerie Figueredo on May 14, 2024. After initially contemplating a bail application, the defendant decided in the middle of the hearing to withdraw the application and make the application later. Then, a week later, on May 21, 2024 defense counsel (though different counsel than now represents the defendant) made a full application to Magistrate Judge Willis for bail. That application, which was denied by Judge Willis, included most of the same arguments made again here. *See* Ex. 1 at 16-26. The defendant's current bail application describes the first appearance when the defendant withdrew his application and includes a transcript of that conference, but it is mistaken when it asserts the follow-up argument never happened. The Government is attaching a transcript of the May 21, 2024 detention hearing to this letter.

his flight from the United States. None of the evidence he has provided does anything to undercut the argument that he left the United States in response to the charges and arrests in this case. In fact, the evidence he has provided corroborates what Ali told the CW on March 26, 2024, that Suhan was already preparing to leave the country, which, of course, he did, days later.

Judge Willis was also correct to conclude that the defendant has undisclosed assets that would enable him to flee again. Before he fled to Dubai the defendant posted a picture of his duffle bag full of cash. This was but one example in a series of posts on Instagram where he showed himself with his sizable drug trafficking proceeds. Two other examples from October 2023 and February 2024 are shown below.



Linked Media File: linked_media/archived_stories_1797910921

Story Id 18005479265031252

Timestamp 2023-10-18 02:14:07 UTC



Linked Media File: linked_media/archived_stories_1800350481

Story Id 18073054582426251

Timestamp 2024-02-21 01:13:50 UTC

Privacy Setting PRIVATE

The defendant claims that he cannot be considered a flight risk because six weeks after fleeing the country he returned. This is argument is unavailing. First, although there is clear evidence here that the defendant fled the country to avoid arrest, proof of international flight is not the standard under 18 U.S.C. § 3142. If the Court cannot find conditions will "reasonably assure the appearance of the [defendant] as required," regardless of what country the defendant is in, detention is required. Second, the key thing here is that the defendant fled, showing he has the

willingness and the means to do so. His return more than a month later does not change the fact that he fled the country to avoid arrest and prosecution. With the available evidence, the most likely reason that the defendant returned when he did was because he believed he was in the clear.[2] The defendant was wrong, as he learned when he was arrested at the airport upon his arrival. He's now facing charges that carry a fifteen-year mandatory minimum sentence, and there is very strong evidence of his involvement in the robbery and drug conspiracies. He was willing to flee before even knowing whether he was charged, and now his incentives to do so have only grown astronomically. His return to the United States when he thought he had avoided being charged in no way mitigates his flight risk now.

Beyond the vast evidence that the defendant has already fled the United States and is a continuing flight risk is the fact that the defendant presents a clear danger to the community if released. The defendant organized an armed robbery and recruited the gunmen who committed it. The defendant is someone who is willing to use others to commit grave acts of violence so that he can profit. This is not something that will change if the defendant is released from custody. The defendant does not need to carry a gun himself to threaten lives. He hires others for that. He also hires others to do much of his drug trafficking, including sending them to foreign countries. In other words, home detention would not meaningfully stop him from continuing to commit the same crimes for which he is currently charged.

***

Accordingly, for the reasons set forth above, and in light of significant evidence that the defendant has already fled the country to avoid arrest, is a continuing risk of flight, hired others to commit a violent, armed robbery, and is a continuing danger to the community, the Government respectfully submits that Judge Willis's decision to detain the defendant should be affirmed, and the defendant should be detained pending trial.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By: _/s/ Andrew Jones_
Andrew Jones
Assistant United States Attorney

---

[2] The Government's evidence of the defendant's involvement was produced pursuant to a protective order designation that prevented the already charged defendants from learning about the evidence and sharing it with the defendant.